UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD E. ALEXANDER, Individually
and as Personal Representative of the
Estate of Etta I. Alexander,

        Plaintiff,

v.                                   File No.  1:11-CV-678

FIRST NATIONAL BANK OF AMERICA,        HON. ROBERT HOLMES BELL

        Defendant.
_____/

## **O P I N I O N**

This action for fraud, slander of title, unjust enrichment, and mistaken payments is before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 15, 16.) For the reasons that follow, the Court will grant Defendant's motion and deny Plaintiff's motion.

### I.

There is no dispute as to the following facts. Plaintiff Donald E. Alexander, a resident of the State of Indiana, is the personal representative of the Estate of Etta I. Alexander, deceased. Defendant First National Bank of America ("FNBA") is a Michigan corporation with principal offices in East Lansing, Michigan.

Etta Alexander was the owner of two parcels of real property in Indiana, a 10- acre parcel at 8550 & 8558 East 1000 South, Lynn, Randolph County ("Parcel 1") and a 46- acre

parcel at 8994 East 1000 South, Lynn, Randolph County ("Parcel 2"). Etta Alexander lived in a house on Parcel 1. On January 20, 2000, Etta Alexander borrowed $79,000 from FNBA at the interest rate of 10.75%, executed a promissory note, and granted FNBA a mortgage on Parcel 1 to secure repayment of the note. (Pl. Exs. C, D.) Etta Alexander defaulted on the Note. On August 5, 2003, FNBA obtained a judgment of foreclosure in the amount of $87,894.28, plus post-judgment interest at the rate of 8% per annum. (Pl. Ex. F, ¶ 1.)

After the judgment of foreclosure, Etta Alexander began making voluntary periodic payments (generally in the range of $835 to $1140 per month) to FNBA and continued to reside in the house on Parcel 1. (Def. Ex. D.) Etta Alexander made no payments after October 27, 2005. (*Id.*) Etta Alexander filed a voluntary petition for a Chapter 13 bankruptcy on April 10, 2006. *See In re Alexander*, No. 06-01631 (U.S. Bankr. Ct. S.D. Ind.). Etta Alexander's bankruptcy petition was dismissed on January 8, 2007, for failure to file a court ordered amended Chapter 13 plan. *Id.* at Dkt. No. 42. FNBA scheduled a foreclosure sale for April 5, 2007, and bid $102,231.21, the full amount of its debt. FNBA received a Sheriff's deed to the property. (Pl. Ex. G.)

FNBA, through its attorneys, applied for a writ of assistance to evict Etta Alexander on May 14, 2007. (Pl. Ex. L.) On May 17, 2007, FNBA began receiving intermittent payments from Plaintiff on behalf of his mother, Etta Alexander. (Def. Ex. D.) The payments ranged from $500 to $5,000, but the majority were for $1,000 and were generally made on a monthly basis. (*Id.*) Between May 17, 2007 and December 16, 2010, Plaintiff made payments totaling $58,000. (*Id.*)

Etta Alexander died in December 2010. Shortly after her death, Plaintiff ceased making monthly payments. FNBA sent Plaintiff a notice to vacate dated February 11, 2011. (Pl. Ex. H.) FNBA sold Parcel 1 in July of 2011 for $62,000. (Def. Ex. E.)

Plaintiff filed this action against FNBA in the Ingham County Circuit Court, alleging fraud, slander of title, unjust enrichment, and mistaken payments. Defendant removed the action to this Court on the basis of diversity of citizenship. (Dkt. No. 1, Notice of Removal.) The parties have filed cross-motions for summary judgment. (Dkt. Nos. 15, 16.)

**II.**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the nonmoving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require

3

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

"Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Warf v. Bd. of Elections of Green Cnty., Ky.*, 619 F.3d 553, 559 (6th Cir. 2010) (quoting *Celotex*, 477 U.S. at 322).

### III.

**A.  Count I, Fraud**

Count I of Plaintiff's complaint is a claim for fraud.  Plaintiff alleges that "Defendant repeatedly made representations to Plaintiff and Plaintiff's decedent that the Judgment was valid, enforceable and due and owing despite the credit bid of FNBA for the full debt at the Foreclosure Sale."  (Compl. ¶ 19.)

A claim of fraud requires a plaintiff to establish the following:

> (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Lawrence M. Clarke, Inc. v. Richco Const., Inc.*, 489 Mich. 265, 284 (2011) (citing *Scott v. Harper Recreation, Inc.*, 444 Mich. 441, 446 n. 3 (1993)).   Fraud cannot be presumed but must be proven by clear and convincing evidence.  *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 414 (2008); *Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976)).

Plaintiff contends that he is entitled to summary judgment on his fraud claim because FNBA made false statements that the debt still existed after the foreclosure sale, Plaintiff reasonably relied on those false statements, and was damaged as a result.

FNBA does not contest Plaintiff's assertion that the judgment, including the underlying debt evidenced by the note and mortgage, was fully satisfied by FNBA's full credit bid at the foreclosure sale. FNBA contends, however, that it is entitled to summary judgment on Plaintiff's fraud claim because Plaintiff has failed to produce any evidence to show that FNBA made any false representations (oral, written, or otherwise) regarding the nature of the post-judgment payments made by Plaintiff.

Although Plaintiff objects to FNBA's threats to evict Plaintiff's mother from Parcel 1 after the foreclosure sale, there can be no dispute that FNBA's references to its right to evict were not false. FNBA had foreclosed on the property, had obtained a sheriff's deed to the property, and was entitled to evict Plaintiff's mother from the premises.

The only evidence Plaintiff has presented in support of his assertion that FNBA made false statements that the debt continued to exist after the foreclosure sale are payoff statements, emails, and attorney letters demanding payment on threat of eviction. (Pl.'s Exs. I, K. L.) The payoff statements all make reference to "payoff information on the above referenced account," "[b]alance with interest," "discharge," and "loan." (Pl. Ex. I.) The emails from FNBA similarly make reference to monthly payments and a payoff. (Pl. Ex. K.) On June 2, 2009, FNBA's attorney's, Gray & Friend, LLP, sent Etta Alexander a notice to vacate premises. The letter recites that a sheriff's sale was held on April 5, 2007, that FNBA

5

was conveyed titled to the property, and that FNBA is entitled to immediate possession of this property.  "Payment as agreed has not been received as of the date of this letter.  FNBA has authorized us to exercise all the rights and remedies available at law and equity to have you removed from this property...., including legal ejectment from the premises or a writ of assistance, if necessary.  If total payoff is not received by June 30, 2009, in the amount of $94,828.19, plus $15.92 per diem from June 2, 2009."  (Pl. Ex. L.)  The letter closes with the statement that:   "THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."  (Pl. Exs. K, L.) In an email dated June 23, 2010, Charles Browning of FNBA advised Plaintiff that taxes were still owing on the property and that FNBA was not paying them.  (Pl. Ex. K.)  Plaintiff contends that the numerous references in these various documents to "debt", "account," "payoff," accrual of interest, legal fees, late fees, and other costs ordinarily associated with a debt or loan, as well as FNBA's reluctance to pay the property taxes, all misled Plaintiff into believing there was still an outstanding obligation to pay on the debt.

     Although Plaintiff claims that he made payments to FNBA only because he was misled into believing that his mother still owed the debt after the foreclosure sale, Plaintiff has not presented any evidence to substantiate his claim.  FNBA's management of the property and its relationship with Plaintiff following the foreclosure sale was undoubtedly less than professional.  Viewed in the light most favorable to Plaintiff, FNBA's use of terms associated with a debt or loan in its correspondence following the foreclosure sale was ambiguous and had the potential to mislead.  However, Plaintiff has not identified any false

6

statements by FNBA that the prior debt was still enforceable after the foreclosure sale, nor has Plaintiff presented any evidence that he in fact believed that the prior debt was still owed, or that he was misled by FNBA's or its attorney's letters' references to loan, or payoff, or interest. Plaintiff has presented no evidence regarding what specific statements he relied on, his understanding with respect to FNBA's correspondence, or his reasons for making the payments to FNBA.

Defendant contends that the evidence reveals that Plaintiff made post-foreclosure sale payments to FNBA not because he believed that the debt was still enforceable, but because, shortly after the Sheriff's Sale, Plaintiff approached FNBA with a proposed payment plan whereby Plaintiff would pay structured monthly payments until the judgment amount of $87,894.28, plus interest, was paid, in exchange for which FNBA would agree to forego taking possession of Parcel 1 and allow Etta Alexander to continue to reside in her home. The record includes letters from FNBA and email correspondence between Plaintiff and FNBA after the foreclosure sale which tend to confirm the existence of such an oral agreement. The May 7, 2008, payoff statement from FNBA which Plaintiff has presented as evidence of FNBA's fraudulent use of "loan" language references this agreement:

> Upon receipt of certified funds in the amount stated, we will send the discharge and/or deed which ever may be required for the above referenced property.
>
> We had allowed you 30 days to pay this loan off, over a year ago. You had also promised payments of $5,000.00 a month. Neither of those things have happened.

(Pl. Ex. I.)

7

>On December 5, 2008, Charles Browning of FNBA wrote Plaintiff:
>
>>Per your last note to us we are expecting something more sustantial [sic] than $1000. What do you plan to bring in next week? This has dragged on far too long and our patience is wearing very thin.

(Def. Ex. H.) In response, Plaintiff wrote: "I will know more on Monday but 5 to 10 thousand every month from now on. Thanks for your banks patience this will turn out OK for all." (*Id.*)

>On February 3, 2009, Browning sent Plaintiff the following email:
>
>>I just went back and reviewed all the notes on this account. Do you realize that on May 16, 2007, you agreed to pay $5k (which you did) and said you hoped to have the loan paid off in 45 days? It's now almost two years later. The loan is neither paid off nor have we received the $5k per month. In May, 2007 the loan was due for October 2005 or 20 payments; today, if I applied all of the payments to the loan it would still be almost 9 payments behind.
>>
>>Obviously, I cannot sit on this any longer. Despite our willingness to work with you, you have not complied with the arrangement you yourself proposed. If I fail to hear from you or receive a substantial payment within 10 days I will have no alternative but to refer this back to our attorney to complete the eviction action.

(*Id.*) On August 6, 2009, Browning sent Plaintiff an email stating:

>>I cannot stress enough that the idea here was not to simply reinstate the loan. The foreclosure is complete. We've been expecting a payoff for over 2 years.

(Def. Ex. I.) Plaintiff's same day response was:

>>Making sure I understand your email, that your bank is not moving forward on the eviction this week my Mother is worried and I would like to let her know.

(Def. Ex. I.)

>In his June 23, 2010, email, Browning noted:
>
>>As I've state previously we are not paying them [the taxes]. And, you told me

8

>you were paying them. Hopefully, you'll pay the account off before then as you've promised numerous times.

(Pl. Ex. K.)

Plaintiff sent Mark McDowell of FNBA the following email dated September 13, 2010:

>I appreciate that your bank has worked with me on allowing my Mother to stay on the farm she grew up on. It's not your fault my brother convinced her to take out this loan and she had no way of paying if back. She is 76 years old and still drives a school bus and very active. I have paid $1000 very close to the 15th of the month for almost the last 2 years. As I have promised I will settle this account . . . . I'm asking for a little more time from your bank to finish this and pay off this account, I will continue to send the $1000 a month until then. You may be well aware of that the value of this property would only be 1/4 to 1/3 of what is owned. I appreciate your banks willingness to work with me in the past and if you allow me I'm sure before the end of the year, this will end up be a positive for your bank and not a bad loss.

(Pl. Ex. N.)

Plaintiff has presented no evidence to rebut the substantial evidence regarding the existence of an oral understanding to forego eviction so long as Plaintiff made monthly payments or repurchased the property. Plaintiff has neither alleged nor presented evidence of any instance where Defendant made a representation that it either knew to be false, or that it made with reckless disregard for its truth or falsity, with the intent that Plaintiff act on it. Plaintiff's only response to Defendant's evidence of an oral agreement is his legal argument that evidence of such an agreement is barred by the statute of frauds.

The statute of frauds provides:

>No estate or interest in lands, other than leases for a term not exceeding 1 year, . . . shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing . . .

Mich. Comp. Laws § 566.106. Plaintiff contends that because there is no written purchase agreement or lease agreement, FNBA's representations must have been intended to mislead Plaintiff into believing that Etta Alexander still had an outstanding obligation to pay.

To the extent the oral agreement reflected in the parties' communications and actions constituted a lease, it was not necessarily a lease for a term exceeding one year. If a contract is capable of being performed within a year, it is not void under the statute of frauds. *Winchell v. Mixter*, 316 Mich. 151, 163 (1946). "[I]f there is any possibility that an oral contract is capable of being completed within a year, it is not within the statute of frauds, even though it is clear that the parties may have intended and thought it probable that it would extend over a longer period, and even though it does so extend." *Drummey v. Henry*, 115 Mich. App. 107, 111-12 (Mich. App. 1982). Furthermore, partial performance of an oral contract to convey an interest in land may remove that contract from the operation of the statute of frauds. *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 540 (1991); *Giordano v. Markovitz*, 209 Mich. App. 676, 679 (1995). Finally, even if the statute of frauds would preclude enforcement of the agreement, it does not make Defendant's representations pursuant to the oral agreement false.

Because Plaintiff has not met his burden of presenting evidence from which a jury could find fraud by clear and convincing evidence, Defendant is entitled to summary judgment on Plaintiff's fraud claim.

**B. Count III, Unjust Enrichment**

Count III of Plaintiff's complaint is a claim for unjust enrichment. Plaintiff alleges

that he conferred a benefit on FNBA in the form of payments totaling $58,000, and that FNBA has retained the benefit of the payments, "despite the fact that no payments were owed, no debt or Note existed, and there is no legal or equitable basis for FNBA to retain the amount paid by Plaintiff." (Compl. ¶ 31.)

In order to succeed on a claim of unjust enrichment, a plaintiff must establish: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991); *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006) (citing *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993)). "[T]he law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Morris Pumps*, 273 Mich. App. at 195.

Plaintiff obtained a benefit from his payments to FNBA. Plaintiff repeatedly requested FNBA's patience while he attempted to obtain the funds to repurchase his mother's house. Because of Plaintiff's payments, his mother was able to continue residing in her house for 46 months after the foreclosure sale. Plaintiff's $58,000 in payments averages out to approximately $1260 per month. This figure does not take into account the $13,000 FNBA incurred in legal expenses, insurance and taxes or the diminution in the value of the property. (Def. Exs. E, K.) There is no evidence that FNBA was unjustly or inequitably enriched at Plaintiff's expense. FNBA is accordingly entitled to summary judgment on Plaintiff's unjust enrichment claim.

**C. Count IV, Mistaken Payments**

Count IV of Plaintiff's complaint is a claim for mistaken payments. Plaintiff alleges that he "made payments to FNBA on the mistaken belief that a legitimate, enforceable and otherwise unsatisfied debt was owed by Plaintiff's mother to FNBA." (Compl. ¶ 34.)

The general rule is that money paid under a mistake of fact may be recovered. *Wilson v. Newman*, 463 Mich. 435, 441-42 (2000). Defendant is entitled to judgment on Plaintiff's mistaken payments claim because, as noted above, Plaintiff has not shown that he made the payments to FNBA under a mistaken of fact. Plaintiff has not come forward with evidence to show that he made the payments pursuant to a mistaken belief that the prior loan or judgment was still due and owing, nor has he come forward with evidence to rebut Defendant's explanation that he made the payments pursuant to an oral agreement. Even if the statute of frauds would prevent the enforcement of the oral agreement, the statute of frauds does not suggest that payments made pursuant to an oral agreement were mistakenly made.

In addition, the general rule that money paid under a mistake of fact may be recovered "is subject to the qualification that the payment cannot be recalled when the situation of the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery." *Id.*(quoting *Walker v. Conant*, 65 Mich. 194, 197-98 (1887)). Defendant is alternatively entitled to judgment on Plaintiff's mistaken payments claim because it has shown that it refrained from evicting Etta Alexander for three years, that it incurred expenses for taxes, insurance and legal fees, and that it was not able to recoup its

expenditures when it sold the property in 2011. Plaintiff has not rebutted FNBA's evidence that its situation was changed in consequence of the payments such that it would be inequitable to allow a recovery.

**D. Count II, Slander of Title**

Count II of Plaintiff's complaint is a claim for slander of title as to Parcel 2 (8994 East 1000 South, Lynn). Plaintiff alleges that after the debt owed by Etta Alexander was fully satisfied by the foreclosure sale, FNBA recorded the judgment against the interest of Etta Alexander in Parcel 2 and threatened Etta Alexander with foreclosure of Parcel 2 unless Etta Alexander agreed to pay the judgment in full.

A claim for slander of title requires a showing that defendant maliciously published false matter disparaging plaintiff's title, causing plaintiff special damages. Mich. Comp. Laws § 565.108; *Sullivan v. Thomas Org. PC*, 88 Mich. App. 77 (1979); *see also Stanton v. Dachille*, 186 Mich. App. 247, 262 (1990) ("The elements of slander of title are falsity of statement and malice."). "[T]he filing of an invalid lien may be a falsehood, even if the matter contained in the lien is correct." *Sullivan*, 88 Mich. App. 77, 83 (1979). "Malice is the gist of the claim." *Glieberman v. Fine*, 248 Mich. 8, 12 (1929). "Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton*, 186 Mich. App. 247, 262 (1990).

Defendant moves for summary judgment on Plaintiff's slander of title claim because FNBA never filed a lien as to Parcel 2. Defendant contends that any judgment lien as to

Parcel 2 attached to all of Etta Alexander's property in Randolph County, Indiana, by operation of law for a period of 10 years, and not by any intentional act on the part of FNBA to publish a false statement of title.

> The relevant Indiana law provides:
>
> All final judgments for the recovery of money or costs in the circuit court and other courts of record of general original jurisdiction in Indiana, whether state or federal, constitute a lien upon real estate and chattels real liable to execution in the county where the judgment has been duly entered and indexed in the judgment docket as provided by law:
>
> (1) after the time the judgment was entered and indexed; and
>
> (2) until the expiration of ten (10) years after the rendition of the judgment;
>
> exclusive of any time during which the party was restrained from proceeding on the lien by an appeal, an injunction, the death of the defendant, or the agreement of the parties entered of record.

*See* Ind. Code § 34-55-9-2.

Although Plaintiff has alleged that FNBA filed a judgment lien against Parcel 2 after the foreclosure sale, Plaintiff has offered no evidence that FNBA intentionally filed a lien with respect to Parcel 2, nor has Plaintiff offered any evidence that the lien was filed after the date of the foreclosure sale. Plaintiff has also alleged that "FNBA regularly sent belligerent demands for payment to Don Alexander, threatening eviction and foreclose on its judgment lien filed against 8994 [Parcel 2]." (Dkt. No. 16, Pl.'s Br. 5.) In support of this contention Plaintiff cites to a series of emails contained in Plaintiff's Exhibit K. The Court has reviewed the emails and finds no evidence of any threat to foreclose on Parcel 2. Plaintiff has not come forward with any evidence to establish either the false statement or the

14

malice element of his claim for slander of title. Accordingly, Defendant is entitled to summary judgment on Plaintiff's slander of title claim.

**IV.**

For the reasons stated herein, the Court will grant Defendant's motion for summary judgment, deny Plaintiff's motion for summary judgment, and enter judgment in favor of Defendant.

An order and judgment consistent with this opinion will be entered.


Dated: <u>April 27, 2012</u>                    <u>/s/ Robert Holmes Bell</u>
                                                 ROBERT HOLMES BELL
                                                 UNITED STATES DISTRICT JUDGE